STEVEN A. GIBSON, ESQ.
Nevada Bar No. 6656
sgibson@righthaven.com
JODI DONETTA LOWRY, ESQ.
Nevada Bar No. 7798
jlowry@righthaven.com
J. CHARLES COONS, ESQ.
Nevada Bar No. 10553
jcoons@righthaven.com
Righthaven LLC
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>Plaintiff,<br><br>v.<br><br>MAJORWAGER.COM, INC., an Ontario, Canada corporation,<br><br>Defendant. | Case No.: 2:10-cv-0484<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Righthaven LLC ("Righthaven") complains as follows against MajorWager.com, Inc. ("MajorWager"), on information and belief:

## **NATURE OF ACTION**

1. This is an action for copyright infringement pursuant to 17 U.S.C. §501.

1

**PARTIES**

2. Righthaven is, and has been at all times relevant to this lawsuit, a Nevada limited-liability company with its principal place of business in Nevada.

3. Righthaven is, and has been at all times relevant to this lawsuit, in good standing with the Secretary of State of Nevada.

4. MajorWager is, and has been at all times relevant to this lawsuit, an Ontario, Canada corporation with its principal place of business in Ontario, Canada.

**JURISDICTION**

5. This Court has original subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1338(a).

6. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) and §1332(c) because this is a civil action between parties with complete diversity of citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

7. MajorWager purposefully directs activities at Nevada residents, which activities have resulted in the copyright infringement alleged herein.

8. MajorWager purposefully directs and effectuates the unauthorized reproduction of Righthaven-owned copyrighted works at www.majorwager.com ("MajorWager's Website").

9. MajorWager's unauthorized reproduction of Righthaven-owned copyrighted works found on MajorWager's Website is purposefully targeted to Nevada residents.

10. MajorWager copied, on an unauthorized basis, the literary work entitled "Books waffle on Tiger, like the rest of us," attached hereto as Exhibit 1 (the "Tiger Article"), from a source emanating from Nevada.

11. MajorWager displayed and displays the Tiger Article on MajorWager's Website.

12. MajorWager's display of the Tiger Article was and is purposefully directed at Nevada residents.

13. MajorWager copied, on an unauthorized basis, the literary work entitled "Free-fallin' Longhorns not worth backing," attached hereto as Exhibit 2 (the "Longhorns Article"), from a source emanating from Nevada.

14. MajorWager displayed and displays the Longhorns Article on MajorWager's Website.

15. MajorWager's display of the Longhorns Article was and is purposefully directed at Nevada residents.

16. MajorWager copied, on an unauthorized basis, the literary work entitled "Error-prone Pryor not Buckeyes' only problem," attached hereto as Exhibit 3 (the "Pryor Article"), from a source emanating from Nevada.

17. MajorWager displayed and displays the Pryor Article on MajorWager's Website.

18. MajorWager's display of the Pryor Article was and is purposefully directed at Nevada residents.

19. MajorWager copied, on an unauthorized basis, the literary work entitled "Oddsmakers wary of siding with favored Mountain West teams," attached hereto as Exhibit 4 (the "Oddsmakers Article"), from a source emanating from Nevada.

20. MajorWager displayed and displays the Oddsmakers Article on MajorWager's Website.

21. MajorWager's display of the Oddsmakers Article was and is purposefully directed at Nevada residents.

22. MajorWager copied, on an unauthorized basis, the literary work entitled "Mountain West Men's Tournament capsules," attached hereto as Exhibit 5 (the "Tournament Article"), from a source emanating from Nevada.

23. MajorWager displayed and displays the Tournament Article on MajorWager's Website.

24. MajorWager's display of the Tournament Article was and is purposefully directed at Nevada residents.

25. MajorWager copied, on an unauthorized basis, the literary work entitled "While fun to root for, Cinderellas not always smart bets," attached hereto as Exhibit 6 (the "Cinderellas Article"), from a source emanating from Nevada.

26. MajorWager displayed and displays the Cinderellas Article on MajorWager's Website.

27. MajorWager's display of the Cinderellas Article was and is purposefully directed at Nevada residents.

28. MajorWager copied, on an unauthorized basis, the literary work entitled "Smart team, talent add up to smart play," attached hereto as Exhibit 7 (the "Smart Team Article"), from a source emanating from Nevada.

29. MajorWager displayed and displays the Smart Team Article on MajorWager's Website.

30. MajorWager's display of the Smart Team Article was and is purposefully directed at Nevada residents.

31. MajorWager copied, on an unauthorized basis, the literary work entitled "UNR's bowl stumble rewards smart money," attached hereto as Exhibit 8 (the "Bowl Stumble Article"), from a source emanating from Nevada.

32. MajorWager displayed and displays the Bowl Stumble Article on MajorWager's Website.

33. MajorWager's display of the Bowl Stumble Article was and is purposefully directed at Nevada residents.

34. MajorWager copied, on an unauthorized basis, the literary work entitled "Beware of disinterested favorites in bowl season" attached hereto as Exhibit 9 (the "Disinterested Favorites Article"), from a source emanating from Nevada.

35. MajorWager displayed and displays the Disinterested Favorites Article on MajorWager's Website.

36. MajorWager's display of the Disinterested Favorites Article was and is purposefully directed at Nevada residents.

37. MajorWager copied, on an unauthorized basis, the literary work entitled "Saints good, lucky enough for 16-0 regular season," attached hereto as Exhibit 10 (the "Saints Article"), from a source emanating from Nevada.

38. MajorWager displayed and displays the Saints Article on MajorWager's Website.

39. MajorWager's display of the Saints Article was and is purposefully directed at Nevada residents.

40. MajorWager copied, on an unauthorized basis, the literary work entitled "League stance softened with London gambling," attached hereto as Exhibit 11 (the "London Gambling Article"), from a source emanating from Nevada.

41. MajorWager displayed and displays the London Gambling Article on MajorWager's Website.

42. MajorWager's display of the London Gambling Article was and is purposefully directed at Nevada residents.

43. MajorWager copied, on an unauthorized basis, the literary work entitled "Contenders, pretenders becoming more evident," attached hereto as Exhibit 12 (the "Contenders Article"), from a source emanating from Nevada.

44. MajorWager displayed and displays the Contenders Article on MajorWager's Website.

45. MajorWager's display of the Contenders Article was and is purposefully directed at Nevada residents.

46. MajorWager copied, on an unauthorized basis, the literary work entitled "Belichick might've been right," attached hereto as Exhibit 13 (the "Belichick Article") from a source emanating from Nevada.

47. MajorWager displayed and displays the Belichick Article on MajorWager's Website.

48. MajorWager's display of the Belichick Article was and is purposefully directed at Nevada residents.

49. MajorWager's contacts with Nevada are continuous and systematic because MajorWager continually publishes, on a near-daily basis, content emanating from Nevada, originally published in daily newspapers published in Las Vegas.

50. MajorWager's contacts with Nevada are continuous and systematic because MajorWager continually publishes, at least once per week, content reflecting current odds posted by sports books operating in Nevada with respect to various sporting events.

## **VENUE**

51. The United States District Court for the District of Nevada is an appropriate venue, pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events giving rise to the claim for relief are situated in Nevada.

52. The United States District Court for the District of Nevada is an appropriate venue, pursuant to 28 U.S.C. §1391(b)(3) and § 1400(a), because MajorWager may be found in Nevada.

53. The United States District Court for the District of Nevada is an appropriate venue, pursuant to 28 U.S.C. §1391(c), because a MajorWager is subject to personal jurisdiction in Nevada.

## **FACTS**

54. Righthaven is the copyright owner of the literary work entitled "March to book begins" (the "Work"), the originally-published electronic version of which is attached hereto as Exhibit 14.

55. The Work was originally published on March 18, 2010.

56. The Work constitutes copyrightable subject matter, pursuant to 17 U.S.C. §102(a)(1).

57. On March 29, 2010, the United States Copyright Office (the "USCO") granted Righthaven the registration to the Work, copyright registration number TX0007120559 (the

"Registration") and attached hereto as Exhibit 15 is evidence of the Registration in the form of a printout of the official USCO database record depicting the occurrence of the Registration.

58. MajorWager owns the domain name MajorWager.com (the "Domain").

59. MajorWager is the registrant, administrator, and technical contact for MajorWager's Website.

60. No later than March 18, 2010, MajorWager reproduced an unauthorized copy of the Work (the "Infringement"), attached hereto as Exhibit 16, on MajorWager's Website.

61. MajorWager did not seek Righthaven's permission, in any manner, to reproduce, display, or otherwise exploit the Work.

62. Righthaven did not grant MajorWager permission, in any manner, to reproduce, display, or otherwise exploit the Work.

## CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT

63. Righthaven repeats and realleges the allegations set forth in Paragraphs 1 through 62 above.

64. Righthaven holds the exclusive right to reproduce the Work, pursuant to 17 U.S.C. §106(1).

65. Righthaven holds the exclusive right to prepare derivative works based upon the Work, pursuant to 17 U.S.C. §106(2).

66. Righthaven holds the exclusive right to distribute copies of the Work, pursuant to 17 U.S.C. §106(3).

67. Righthaven holds the exclusive right to publicly display the Work, pursuant to 17 U.S.C. §106(5).

68. MajorWager reproduced the Work, in derogation of Righthaven's exclusive rights under 17 U.S.C. §106(1).

69. MajorWager created an unauthorized derivative of the Work, in derogation of Righthaven's exclusive rights under 17 U.S.C. §106(2).

70. MajorWager distributes unauthorized reproductions of the Work via MajorWager's Website, in derogation of Righthaven's exclusive rights under 17 U.S.C. §106(3).

71. MajorWager publicly displays an unauthorized reproduction of the Work at MajorWager's Website, in derogation of Righthaven's exclusive rights under 17 U.S.C. §106(5).

72. MajorWager has willfully engaged in the copyright infringement of the Work.

73. MajorWager's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Righthaven in an amount Righthaven cannot ascertain, leaving Righthaven with no adequate remedy at law.

74. Unless MajorWager is preliminarily and permanently enjoined from further infringement of the Work, Righthaven will be irreparably harmed, and Righthaven is thus entitled to preliminary and permanent injunctive relief against further infringement by MajorWager of the Work, pursuant to 17 U.S.C. §502.

## **PRAYER FOR RELIEF**

Righthaven requests that this Court grant Righthaven's claim for relief herein as follows:

1. Preliminarily and permanently enjoin and restrain MajorWager, and MajorWager's officers, agents, servants, employees, attorneys, parents, subsidiaries, related companies, partners, and all persons acting for, by, with, through, or under MajorWager, from directly or indirectly infringing the Work by reproducing the Work, preparing derivative works based on the Work, distributing the Work to the public, and/or displaying the Work, or ordering, directing, participating in, or assisting in any such activity;

2. Direct MajorWager to preserve, retain, and deliver to Righthaven in hard copies or electronic copies:

    a. All evidence and documentation relating in any way to MajorWager's use of the Work, in any form, including, without limitation, all such evidence and documentation relating to MajorWager's Website;

      b.    All evidence and documentation relating to the names and addresses (whether electronic mail addresses or otherwise) of any person with whom MajorWager has communicated regarding MajorWager's use of the Work; and

      c.    All financial evidence and documentation relating to MajorWager's use of the Work;

3.    Direct Enom, Inc. and any successor domain name registrar for the Domain to lock the Domain and transfer control of the Domain to Righthaven;

4.    Award Righthaven statutory damages for the infringement of the Work, pursuant to 17 U.S.C. §504(c);

5.    Award Righthaven pre- and post-judgment interest in accordance with applicable law; and

6.    Grant Righthaven such other relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Righthaven requests a trial by jury pursuant to Fed.R.Civ.P. 38.

Dated this 7th day of April, 2010.

                RIGHTHAVEN LLC

                By: /s/ J. Charles Coons
                STEVEN A. GIBSON, ESQ.
                Nevada Bar No. 6656
                JODI DONETTA LOWRY, ESQ.
                Nevada Bar No. 7798
                J. CHARLES COONS, ESQ.
                Nevada Bar No. 10553
                9960 West Cheyenne Avenue, Suite 210
                Las Vegas, Nevada 89129-7701
                Attorneys for Plaintiff