STEVEN A. GIBSON, ESQ.
Nevada Bar No. 6656
sgibson@righthaven.com
J. CHARLES COONS, ESQ.
Nevada Bar No. 10553
ccoons@righthaven.com
JOSEPH C. CHU, ESQ.
Nevada Bar No. 11082
jchu@righthaven.com
Righthaven LLC
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>              Plaintiff,<br><br>v.<br><br>MAJORWAGER.COM, INC., an Ontario, Canada corporation,<br><br>              Defendant. | Case No.: 2:10-cv-0484-RCJ-LRL<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

Righthaven LLC ("Righthaven") hereby opposes Defendant MajorWager.com, Inc.'s ("MajorWager") Motion to Dismiss (Docket No. 8; "Motion to Dismiss").  Righthaven bases this Opposition to MajorWager's Motion to Dismiss on the pleadings and papers on file in this action, on oral argument of counsel made at the time of this Court's hearing of the Motion to Dismiss, and on any other matter of which this Court takes notice.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **INTRODUCTION**

   A. ***Standing***

MajorWager's standing argument is illegitimate for the following five independent reasons:

(1) MajorWager's standing argument is not ripe for consideration.  MajorWager relies upon a hypothetical, erroneous assumption as a basis for its standing argument, which is both inappropriate and a waste of this Court's time.  MajorWager has neither seen nor requested the copyright assignment entered into by Righthaven and assignor Stephens Media LLC (the "Righthaven Assignment"), attached hereto at Exhibit 1.

(2) The pleading requirement associated with standing has been far exceeded by Righthaven.

(3) Righthaven is entitled to a presumption of copyright ownership.  The United States Copyright Office (the "USCO") has already examined Righthaven's claim of copyright ownership and has granted Righthaven registrant status.  MajorWager's standing argument is merely an attempt to diminish the USCO's evaluation of ownership and the presumption arising therefrom.

(4)  Assuming, *arguendo*, that this Court believes that Righthaven's presumption of ownership does not effectively end the standing analysis, the Righthaven Assignment, presented herewith, unequivocally substantiates Righthaven's standing.

(5) To the extent that this Court finds the Righthaven Assignment to be in any way unclear as to the transfer of accrued causes of action, this gives rise to a genuine issue of material fact.

Therefore, Righthaven contends that if Righthaven is correct on any of the above five arguments, then MajorWager's standing argument must fail.

### B. _Personal Jurisdiction_

Stunningly, MajorWager has also failed to present to this Court a very clear Ninth Circuit holding:  willful copyright infringers who reproduce content from a source known to exist in the forum purposefully avail themselves of said forum. _Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.,_ 106 F.3d 289 (9th Cir. 1997)  _rev'd_ on other grounds _Feltner v. Columbia Pictures Television, Inc._, 523 U.S. 340 (1998). MajorWager's tangential allusions to not having "expressly aimed" activities toward Nevada vis-à-vis MajorWager's website is a red-herring discussion: MajorWager's unauthorized reproduction of Righthaven-owned copyrighted works is the fact most pertinent for jurisdictional purposes. Independently, MajorWager's conduct, as pled in the Complaint (Docket No. 1), and determined through additional research and potential jurisdictional discovery, clearly establishes sufficient ties with Nevada to further substantiate both specific and generally-based personal jurisdiction.

## II.   FACTS

Righthaven is the owner of the copyright in the literary work entitled "March to book begins" (the "Work"; Complaint Ex. 14).  Righthaven acquired ownership of the Work on or about March 24, 2010, whereupon Righthaven entered into the Righthaven Assignment with Stephens Media LLC ("Stephens").  In addition to assigning Righthaven exclusive ownership of the Work, the Righthaven Assignment transferred to Righthaven the right to seek redress for all accrued causes of actions, including, without limitation, infringements of the Work occurring prior to the effective date of the Righthaven Assignment.

MajorWager is the owner and registrant of the Internet domain name <majorwager.com>. Complaint ¶ 58, 59.  MajorWager is the self-proclaimed "Internet's #1 Sports Forum Talk Forums" (evidence of which is attached hereto as Exhibit 2) and the vast majority of discussion forums provided by MajorWager are related to sports wagering. MajorWager provides, on MajorWager's website, a "major news" section where the title and date of publication of news publications related to sports wagering are listed. Exhibit 2.  The individual identified as CLEVFAN posted at least fourteen (14) Righthaven-owned literary works on the MajorWager

website. Complaint Ex. 1-13, 16.  CLEVFAN is listed on the "contact us" webpage (evidence of which is attached hereto as Exhibit 3), has the title of "staff" and is by far the most active user of the website according to the total number of posts on the website.

The Work was originally published on March 18, 2010. Complaint ¶ 55.  On March 29, 2010, the USCO granted Righthaven the registration to the Work, copyright registration number TX0007095275. Complaint ¶ 57, Complaint Ex. 15.  On or about March 18, 2010, MajorWager willfully reproduced an unauthorized copy of the Work (the "Infringement") and publicly displayed said unauthorized copy on the MajorWager website. Complaint Ex. 16. The Work and the Infringement both depict the Las Vegas *Review-Journal* as the original source publication. Complaint Ex. 14, 16. On or about February 22, 2010, MajorWager willfully reproduced an unauthorized copy of the Righthaven- owned literary work entitled "Books waffle on Tiger, like the rest of us" and publicly displayed said unauthorized copy on the MajorWager website. Complaint Ex. 1. On or about March 5, 2010, MajorWager willfully reproduced an unauthorized copy of the Righthaven-owned literary work entitled "Free-fallin' Longhorns not worth backing" and publicly displayed said unauthorized copy on the MajorWager website. Complaint Ex. 2. On or about October 23, 2009, MajorWager willfully reproduced an unauthorized copy of the Righthaven-owned literary work entitled "Error-prone Pryor not Buckeyes' only problem" and publicly displayed said unauthorized copy on the MajorWager website. Complaint Ex. 3. On or about March 15, 2010, MajorWager willfully reproduced an unauthorized copy of the Righthaven-owned literary work entitled "Oddsmakers wary of siding with favored Mountain West teams" and publicly displayed said unauthorized copy on the MajorWager website. Complaint Ex. 4. On or about March 10, 2010, MajorWager willfully reproduced an unauthorized copy of the Righthaven-owned literary work entitled "Mountain West Men's Tournament capsules" and publicly displayed said unauthorized copy on the MajorWager website. Complaint Ex. 5. On or about March 22, 2010, MajorWager willfully reproduced an unauthorized copy of the Righthaven-owned literary work entitled "While fun to root for, Cinderellas not always smart bets" and publicly displayed said unauthorized copy on the MajorWager website. Complaint Ex. 6. On or about March 8, 2010, MajorWager willfully

reproduced an unauthorized copy of the Righthaven-owned literary work entitled "Smart team, talent add up to smart play" and publicly displayed said unauthorized copy on the MajorWager website. Complaint Ex. 7. On or about December 25, 2009, MajorWager willfully reproduced an unauthorized copy of the Righthaven-owned literary work entitled "UNR's bowl stumble rewards smart money" and publicly displayed said unauthorized copy on the MajorWager website. Complaint Ex. 8. On or about December 18, 2009, MajorWager willfully reproduced an unauthorized copy of the Righthaven-owned literary work entitled "Beware of disinterested favorites in bowl season" and publicly displayed said unauthorized copy on the MajorWager website. Complaint Ex. 9. On or about December 7, 2009, MajorWager willfully reproduced an unauthorized copy of the Righthaven-owned literary work entitled "Saints good, lucky enough for 16-0 regular season" and publicly displayed said unauthorized copy on the MajorWager website. Complaint Ex. 10. On or about October 26, 2007, MajorWager willfully reproduced an unauthorized copy of the Righthaven-owned literary work entitled "League stance softened with London gambling" and publicly displayed said unauthorized copy on the MajorWager website. Complaint Ex. 11. On or about September 28, 2009, MajorWager willfully reproduced an unauthorized copy of the Righthaven-owned literary work entitled "Contenders, pretenders becoming more evident" and publicly displayed said unauthorized copy on the MajorWager website. Complaint Ex. 12. On or about November 16, 2010, MajorWager willfully reproduced an unauthorized copy of the Righthaven-owned literary work entitled "Belichick might've been right" and publicly displayed said unauthorized copy on the MajorWager website. Complaint Ex. 13. MajorWager knew each and every copyright infringement came from a Nevada-based source. Complaint ¶ 7-9.

III. **ARGUMENT**

    A. ***Righthaven's Standing to Sue is Clear and Unequivocal***

        1. ***The Motion to Dismiss is not Ripe for Consideration***

    MajorWager's standing argument is not ripe for consideration because MajorWager has not seen the Righthaven Assignment. Rather than review the Righthaven Assignment prior to

presenting the standing argument, MajorWager is instead relying upon the erroneous,

inappropriate, hypothetical assumption that, somehow, Righthaven did not take an assignment of

all past, present, and future causes of action.  Accordingly, MajorWager's argument is not fit for

judicial decision and is effectively wasting the Court's time.

        MajorWager's failure to review the Righthaven Assignment precludes MajorWager

from asserting a ripe, well-founded standing argument.  A determination of ripeness requires a

two prong test: "(1) the fitness of the issues for judicial decision; and (2) the hardship to the

parties of withholding court consideration." *Manufactured Home Communities, Inc. v. City of

San Jose*, 420 F.3d 1022, 1033 (9th Cir. 2005) (internal quotation marks omitted).

MajorWager's failure to review the Righthaven Assignment is dispositive to this analysis.  The

entirety of MajorWager's position on standing is based upon the incorrect assumption that the

Righthaven Assignment did not incorporate both ownership of the copyright and all accrued

causes of action.  In other words, MajorWager is presenting the Court with an argument entirely

founded upon sheer speculation as to the nature and dimension Righthaven's copyright

ownership.  As such, MajorWager simply cannot present a ripe, substantiated standing argument

prior to examining the Righthaven Assignment.

        Rather than waste the Court's time by filing a grossly premature motion, MajorWager

should have requested the Righthaven Assignment in the normal course of discovery.  Upon

receipt of the Righthaven Assignment, MajorWager could have prudently assessed the adequacy

of the assignment terms, thereby achieving a full understanding of the sufficiency of the

copyright transfer.  At that point, if MajorWager was still inclined to challenge Righthaven's

standing, such an argument may be ripe for consideration.  In *Baldain v. American Home

Mortgage Servicing, Inc.*, No. 09-0931, 2010 WL 56143, at *5 (E.D. Cal. Jan. 5, 2010), the court

assessed a Rule 12(b)(6) motion wherein the plaintiffs did not specifically plead the date of the

offense.  In its analysis, the court noted the overall sufficiency of the plaintiffs' allegations and

further noted that the date of violation "is exactly the sort of information which should be

obtained through the discovery process."  *Id.* (internal quotation marks omitted).  Similar logic

should be applied here.  As detailed below, Righthaven was not required to exhibit the

Righthaven Assignment, nor was Righthaven required to plead the specific terms contained therein.  Nevertheless, MajorWager argues that the Complaint "does not give a date when the alleged transfer occurred." Motion to Dismiss at 4, ln. 19-20.  However, just as the court reasoned in *Baldain*, the effective date of the Righthaven Assignment is precisely the type of information that should be obtained through discovery.  As such, MajorWager should have requested the Righthaven Assignment in the normal course of discovery and proceeded accordingly. MajorWager neglected to do so, thus rendering its standing argument unripe for consideration and altogether unmeritorious.

MajorWager's failure to consider the Righthaven Assignment prior to asserting its standing argument is highly disconcerting.  MajorWager's decision to put this argument before this Court and effectively waste the Court's time may well warrant the exercise of the Court's inherent power to impose sanctions.  This inherent power is deeply-rooted in the judiciary, and "extends to a full range of litigation abuses." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). This includes the power to impose sanctions "on counsel who willfully abuse the judicial processes." *U.S. v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983) (internal quotation marks omitted).  Here, MajorWager's assertion of a grossly premature, blatantly erroneous standing argument rises to the level of abuse of judicial process.

## 2. <u>*Righthaven has far Exceeded the Pleading Requirements*</u>

Righthaven has clearly met the pleading requirements associated with both standing and the copyright claim.  Copyright actions operate under basic notice pleading requirements, rather than the heightened pleading standard imposed under Fed. R. Civ. P. 9.  As demonstrated in the Complaint, Righthaven's allegations as pled easily satisfy the notice pleading requirements. Consequently, MajorWager's unsubstantiated assertion that Righthaven's standing was insufficiently pled is highly erroneous.

Copyright actions are not held to a heightened pleading requirement.  The Federal Rules provide that heightened pleading standards are only applied in cases governed by Rule 9(b). *Empress LLC v. City and County of San Francisco*, 419 F.3d 1052, 1055 (9th Cir. 2005); *citing*

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168-69 (1993).  MajorWager has not presented any authority to suggest that the instant claim is subject to a heightened pleading requirement.  This failure to cite legal authority is not surprising, as non-fraud allegations, such as the instant copyright claim, are not subject to Rule 9 heightened pleading requirements as this "would impose a burden on plaintiffs not contemplated by the notice pleadings requirements of Rule 8(a)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003).  As such, the heightened pleading standard imposed by Rule 9 is entirely inapplicable at present.

Accordingly, Righthaven's copyright claim is therefore governed by basic notice pleading requirements.  Righthaven has clearly met this notice pleading burden.  It is well-established that to prove copyright infringement, the plaintiff must demonstrate: "(1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant." *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991); *citing Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989).  Thus, a plaintiff in a properly pled copyright claim must satisfy these elements through the factual allegations in the pleadings.  In the instant matter, the elements of a copyright claim are expressly pled in the Complaint, wherein Righthaven alleges copyright ownership of the Work and also alleges the MajorWager Infringement.  Complaint ¶ 54, 60.  Furthermore, Righthaven presents evidence in support of these allegations by exhibiting both the copyright registration and a printout of the Infringement. Complaint Ex. 15, 16.  A copyright claimant "satisfies Rule 8 if the 'complaint and the incorporated documents are sufficient to allege' that the Defendants copied the work in question." *Home Design Services, Inc. v. B & B Custom Homes, LLC*, No. 06-00249, 2006 WL 3328140, at *4 (D. Colo. Nov. 15, 2006); *quoting Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 942 (10th Cir. 2002).  Summarily, because copyright claims are subject to bare notice pleading requirements under Rule 8(a), Righthaven's allegations unequivocally satisfy Righthaven's pleading burden associated with both standing and the copyright claim.

MajorWager's unfounded attempt to impose a pleading standard beyond that enumerated by Rule 8(a) should not be entertained by this Court.  MajorWager is attempting to impose a

heightened standard by arguing that Righthaven somehow lacks standing because Righthaven has "not alleged that it owned the copyright at issue at the time of the alleged infringement." Motion to Dismiss at 2, ln. 8-9.  However, pursuant to Rule 8(a), <u>Righthaven was not required to plead or exhibit the Righthaven Assignment, nor was Righthaven required to specifically plead the timeframe of its copyright ownership</u>.  MajorWager offers no legal authority to support the proposition that Righthaven was required to plead the details and dimensions of the Righthaven Assignment.  In fact, given the pedestrian nature of MajorWager's argument, the only authority Righthaven can identify that specifies additional elements required of a copyright plaintiff to achieve Rule 8(a) compliance derives from the Eastern District of New York.  In *Home & Nature Inc. v. Sherman Specialty Company, Inc.*, 322 F. Supp. 2d 260, 265 (E.D.N.Y. 2004), the court held that a complaint alleging copyright infringement sufficiently complies with Rule 8(a) so long as the plaintiff asserts: "(1) which specific original works form the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts [and] during what time the defendant infringed the copyright."  Here, Righthaven irrefutably satisfies each of these elements.  Righthaven's Complaint: (1) identifies and exhibits the Work, (2) alleges Righthaven's ownership of the Work, (3) alleges and exhibits the copyright registration, and (4) identifies and exhibits the MajorWager Infringement. Complaint ¶ 54, 57, 60, Complaint Ex. 14-16.  Importantly, it must be noted that the Rule 8(a) pleading elements outlined in *Home & Nature* do not require the plaintiff to allege copyright ownership at the time of the infringement.  There is no legal basis upon which such a requirement should be imposed here.  Righthaven's allegations are more than sufficient to satisfy the basic pleading requirements imposed by Rule 8(a).  The adequacy of Righthaven's well-pled Complaint is not diminished simply because Righthaven did not plead the additional facts unfoundedly raised by MajorWager in the Motion to Dismiss.

9

### 3. *MajorWager has Ignored Righthaven's Presumption of Ownership*

Not only did Righthaven meet the pleading requirement, but standing in this matter has been dispositively resolved by Righthaven's presumption of copyright ownership. As Righthaven is the copyright registrant, the Copyright Act clearly mandates that Righthaven is afforded an evidentiary presumption as the exclusive owner of the copyright. 17 U.S.C. § 410(c). Specifically, section 410(c) provides, in pertinent part, that "[i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *See also Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 201 (9th Cir. 1989); *Marquis Models, Inc. v. Green Valley Ranch Gaming, LLC*, No. 05-01400, 2007 WL 2904172, at *3 (D. Nev. Sept. 30, 2007). Therefore, to challenge Righthaven's status as the rightful litigant in this lawsuit, it is MajorWager's burden to provide evidence that rebuts Righthaven's presumption of ownership. *See May v. Morganelli-Heumann & Associates*, 618 F.2d 1363, 1369 (9th Cir. 1980) (presumption of copyright ownership is rebuttable through extrinsic evidence). MajorWager has not provided of single item of rebuttal evidence. Instead, MajorWager attempts to undermine Righthaven's standing by merely hypothesizing – without any substantiation – as to why Righthaven's copyright registration is somehow invalid for the purposes of standing. MajorWager futilely notes that "it appears that Righthaven was not, in fact, the copyright owner at the time of the alleged infringement." Motion to Dismiss at 4, ln. 3-4. This inconclusive statement is irrelevant to the instant analysis and does nothing to contest Righthaven's presumption of copyright ownership. Absent any showing of evidence to rebut this presumption, this Court need not entertain MajorWager's efforts to diminish the USCO's evaluation of Righthaven's copyright claim and the presumption of ownership arising therefrom.

**4.   _The Righthaven Assignment Unequivocally Substantiates Righthaven's Standing to Sue_**

**a.   _The Righthaven Assignment Expressly Assigns Exclusive Copyright Ownership and Accrued Causes of Action_**

The Righthaven Assignment assigns to Righthaven all exclusive ownership rights in and to the Work, and is expressly inclusive of all accrued causes of action.  Specifically, the Righthaven Assignment provides:

> Assignor hereby transfers, vests and assigns [the Work]…to Righthaven…all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership as well as the right to seek redress for _**past, present and future infringements**_ of the copyright in and to the Work.

(Exhibit 1) (emphasis added).

Such unambiguous language is not subject to alternative interpretation.[1]  The Righthaven Assignment effects an assignment of the right to sue for any possible infringements of the Work, whether accrued or unaccrued.  This axiom is exemplified by the Fifth Circuit's analysis of this issue:

> Almost completely overlooked by all counsel is the effectiveness of an assignment of accrued causes of action for copyright infringement.  _**All that is required is that the contract cover in no uncertain terms choses in action for past, prior, accrued damages**_…Here, the parties to the agreement were clearly careful to be clear and are clearly correct.  By express language the assignments cover the accrued causes of action for prior infringement.  _**As an assignee of the causes of action for infringement damages, past, present and future, [the plaintiff] has the right to maintain the action**_.

_Prather v. Neva Paperbacks, Inc._, 410 F.2d 698, 700 (5th Cir. 1969) (emphasis added).

Addressing _Prather_, the Ninth Circuit in _Silvers v. Sony Pictures Entertainment, Inc._, 402 F.3d 881, 889 (9th Cir. 2005) does not dispute the Fifth Circuit's analysis, acknowledging that the facts in _Prather_ involved an assignment of all "accrued causes of action."[2]  Accordingly, in the

---

[1] To the extent that the Righthaven Assignment is deemed by the Court to somehow be subject to alternative interpretation, this gives rise to a general issue of material fact as discussed on pages 16-18, _infra_.

[2] In _Silvers_, the court notes that _Prather_ was decided prior to the enactment of the 1976 Copyright Act and was therefore an "unhelpful authority" for the purposes of the Ninth Circuit's discussion in _Silvers_.  _Silvers_, 402 F.3d at 889.  However, the Ninth Circuit's issue with _Prather_ was not whether the Fifth Circuit properly equated the definition of "accrued" claims with the definition of "past" claims in the context of copyright assignments.  In fact,

instant matter, Righthaven acquired ownership of all accrued causes of action because the Righthaven Assignment specifically transfers the "right to seek redress for past, present and future infringements."  By no means do the terms of the Righthaven Assignment impose any form of limitation upon Righthaven with respect to Righthaven's standing to sue for infringement of the Work.  In fact, a cursory review of the Righthaven Assignment demonstrates that the language contained therein was expressly incorporated for the purpose of transferring exclusive ownership rights in their entirety, including all accrued causes of action.  Assignments of this nature are expressly permitted by 17 U.S.C. § 201(d)(1), which provides that copyright ownership "may be transferred in whole or in part," and such assignments are recognized as valid by the courts. *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991).  Here, the Righthaven Assignment vests Righthaven with the unequivocal right to pursue legal recourse for all infringements of the Work, including those accrued prior to the Righthaven Assignment.

### b.  *Righthaven has Standing to Prosecute Past Infringements because the Righthaven Assignment Expressly Includes Accrued Causes of Action*

An assignment expressly inclusive of accrued causes of action enables the assignee to bring suit for all infringements of the assigned work, irrespective of the date of infringement. *ABKCO*, 944 F.2d at 980-81.  Amazingly, MajorWager makes the inexplicable assertion that the Second Circuit's holding in *ABKCO* actually strengthens MajorWager's standing argument. Motion to Dismiss at 3, ln. 12-14.  MajorWager cites the *ABKCO* court's recitation of § 501(b) of the Copyright Act, stating that "the legal or beneficial owner of an exclusive right under a copyright is entitled to bring actions for infringements of that right occurring during the period of ownership." *ABKCO,* 944 F.2d at 980.  However, MajorWager conspicuously fails to inform this Court of the **very next sentence** of the *ABKCO* decision, wherein the Second Circuit applies § 501(b) to a set of facts involving an assignment of both copyright ownership and accrued causes

the *Silvers* decision apparently recognized and approved of this analysis. *Id.*  The Ninth Circuit's issue instead arose from the *Prather* decision's lack of a 17 U.S.C. § 501(b) analysis, which had not yet been enacted at the time the *Prather* decision was rendered. *Id.*

of action: "[t]hus, a copyright owner can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them." *ABKCO*, 944 F.2d at 980; *see also* Nimmer on Copyright § 12.02[B] (a copyright assignment is generally construed not to assign existing causes of action *unless such claims are expressly included in the grant*) (emphasis added).  In other words, an assignee of a copyright has standing to sue for any past infringements of the assigned work so long as all accrued causes of action are expressly incorporated into the assignment.  This is exactly the case at present.  The Righthaven Assignment, in addition to vesting Righthaven with exclusive ownership rights in and to the Work, specifically includes the assignment of all accrued causes of action.  Thus, it is entirely irrelevant whether the MajorWager Infringement occurred before, during, or after the time of Righthaven Assignment.

MajorWager's reliance upon the Ninth Circuit's decision in *Silvers* is similarly erroneous. Motion to Dismiss at 3, ln. 16-19. Such reliance is disconcerting given the clarity of the *Silvers* decision: an assignee has standing to sue for past infringements so long as the assignment includes both exclusive ownership and accrued causes of action. *Silvers*, 402 F.3d at 890; *citing ABKCO*, 944 F.2d at 980-81.  In this regard, it is shocking that MajorWager fails to realize that its reliance upon *ABKCO* is rendered entirely inappropriate by the Ninth Circuit's decision in *Silvers*.  In *Silvers*, the court was faced "with a situation in which the owner of all the exclusive rights and the owner of the accrued causes of action [were] *two different people*." *Silvers*, 402 F.3d at 889 (emphasis added).  As a result, the Ninth Circuit held that the plaintiff's "bare assignment of an accrued cause of action" was insufficient to establish standing. *Id.* at 890.  The facts in *Silvers* are blatantly distinguishable from those at present, and it is revealing that MajorWager fails to acknowledge this distinction in the Motion to Dismiss.  To reiterate, the Righthaven Assignment transferred, vested, and assigned to Righthaven (1) "all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership" and (2) "the right to seek redress for past, present and future infringements" of the Work. Exhibit 1.  Here, there is no division of copyright ownership as was the case in *Silvers*; Righthaven is the owner of both the exclusive rights in and

to the Work and all accrued causes of action.  In fact, it appears that had the Ninth Circuit been

dealing with the all-inclusive terms of the Righthaven Assignment rather than the limited

assignment at issue in *Silvers*, there would have been no question as to the sufficiency of the

plaintiff's standing to sue.

Consequently, the Ninth Circuit's holding in *Silvers* grossly diminishes MajorWager's

standing argument.  Specifically, the *Silvers* decision squarely undermines MajorWager's

apparent position that under no circumstances can an assignee of accrued claims seek redress for

past infringements.  While a bare assignment of accrued claims was deemed insufficient by the

court, an assignment of accrued claims coupled with a transfer of copyright ownership would

suffice an adequate basis for standing. *Id. citing ABKCO*, 944 F.2d at 980-81.  Critically,

MajorWager should have represented to the Court that the Ninth Circuit has clearly recognized

that assignees of accrued causes of action may in fact have standing to sue for past

infringements.  Moreover, MajorWager's presentment of *Silvers* as an example of why

Righthaven might not have standing to sue demonstrates that MajorWager is erroneously

hypothesizing as to the nature of the Righthaven Assignment.

Preceding authority unequivocally establishes that an assignee may pursue all existing

causes of action so long as such causes of action are expressly included in the assignment.  In

2007, this Court considered whether a plaintiff had standing to sue for past copyright

infringements following a transfer of copyright ownership "that in effect backdated a purchase of

the copyrights." *Marquis Models*, 2007 WL 2904172, at *4.  In its analysis, this Court noted that

"[s]uch a transfer does not violate the Copyright Act and could potentially give [the plaintiff]

standing." *Id.*  Relying exclusively on *ABKCO* and *Silvers*, this Court held that "such a

transaction requires simultaneous conveyance of both the copyright and accrued claims.

Furthermore, such a transfer requires the accrued causes of action to be expressly included in the

assignment." *Marquis Models*, 2007 WL 2904172, at *4; *citing ABKCO*, 944 F.2d at 980;

*Silvers*, 402 F.3d at 889-90 (internal quotation marks omitted).  The Court should not deviate

from its prior analysis.  Here, Righthaven's acquisition of exclusive ownership rights in and to

14

the Work – along with its acquisition of all accrued causes of action – should accordingly be recognized as an adequate basis for standing.

This Court is not alone in having held consistently with the *ABKCO* and *Silvers* decisions.  In 2007, the United States District Court for the Central District of California held that a plaintiff lacked standing to sue for past infringements because the assignment at issue merely "assign[ed], transfer[red] and set over unto [the plaintiff] all right, title and interest in and to said trade dresses and copyrights." *Lanard Toys Limited v. Novelty Inc.*, 511 F. Supp. 2d 1020, 1033 (C.D. Cal. 2007).  Distinguishing the facts in *Lanard* from those at present, the court's decision in *Lanard* was based entirely on the fact that the assignment did not "expressly convey [the assignor's] existing claims for infringement." *Id*.  Similarly, the United States District Court for the District of Arizona has held that "[c]opyright assignments do not include accrued causes of action unless they are expressly included in the assignment." *Giddings v. Vision House Production, Inc.*, 584 F. Supp. 2d 1222, 1229 (D. Ariz. 2008); *citing ABKCO*, 944 F.2d at 980; *see also Fairview Development Corp. v. Aztex Custom Homebuilders, LLC*, No. 07-0337, 2009 WL 529899, at *9 (D. Ariz. Mar. 3, 2009).  Moreover, the Second Circuit, in addition to its decision in *ABKCO*, has held that an assignment transferring all rights to a work, including "all existing or potential causes of action," sufficiently vested a transferee with right to pursue claims for past infringements. *Two Pepper Music v. Rhino Records, Inc.*, 173 F.3d 846, No. 98-9242 (2d Cir. Apr. 23, 1999); *see also Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007) ("An owner may also convey his interest in prosecuting accrued causes of action for infringement.").  It should be noted that beyond *ABKCO* and *Silvers*, MajorWager fails to cite any legal authority – Ninth Circuit or otherwise – to support MajorWager's proposition that the Righthaven Assignment is invalid for the purposes of standing.  Such authority does not exist, and now MajorWager is futilely attempting to avoid liability by asking this Court to ignore its own precedent and the precedent of courts across the country.   The case law on this topic is clear and unequivocal: an assignment of copyright ownership that specifically conveys past, present, and future causes of action entitles the assignee to sue for all accrued infringements.

15

### c.   *MajorWager's Argument is Illogical and, if Accepted, would Effectively Dissuade Corporate Acquisitions and Assignments*

In addition to defying the firmly established legal authority on this topic, MajorWager's standing challenge also directly defies all notions of logic and practicality.  If this Court were to accept MajorWager's argument, the rights of any business engaging in a corporate acquisition wherein an assignment of rights occurs would be severely diminished.  In *SAPC, Inc. v. Lotus Development Corp.*, 921 F.2d 360 (1st Cir. 1990), the First Circuit sided with the plaintiff corporation, holding that it had acquired the entirety of the assignor's intellectual property rights due to the unambiguous language of the asset purchase. *Id.* at 363.  This included the plaintiff's acquisition of all "existing claims for infringement." *Id.* at 364.  Applying MajorWager's logic to this scenario, the corporate assignee would be precluded from bringing a claim for any infringement that occurred prior to the acquisition of assets – regardless of the all-inclusive terms of the transfer – merely because the company's ownership did not manifest until after the date of the infringement.  Furthermore, any infringements accrued prior to the assignment of rights would be effectively immunized from liability as the exclusive owner of these accrued causes of action would be precluded from filing suit.  Despite MajorWager's self-serving efforts to achieve such immunization from liability, the practical effect of MajorWager's argument is simply inconceivable and should not be entertained by this Court.  A plaintiff assignee should not be denied recourse to pursue accrued causes of action when such rights are specifically and unambiguously included in the assignment of rights.  Similarly, MajorWager's willful copyright infringement should not be exempted from liability simply because the infringing activity occurred prior to the Righthaven Assignment.

### 5.   *Any Uncertainty as to the Intent of the Righthaven Assignment Gives Rise to a Genuine Issue of Material Fact*

To the extent that this Court finds the Righthaven Assignment to be factually unclear in any manner, this gives rise to a genuine issue of material fact.  Therefore, should this Court choose to treat MajorWager's Motion to Dismiss as a motion for summary judgment as expressly

16

permitted by Rule 12(d), MajorWager's motion must be denied.  "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment." *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  However, a district court may consider materials attached to the complaint, materials incorporated by reference in the complaint, or matters of judicial notice "without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.  Thus, while MajorWager's efforts to dismiss for lack of standing are clearly unfounded in light of the preceding arguments, MajorWager would also fail on a motion for summary judgment because any remaining uncertainty about the Righthaven Assignment constitutes a genuine issue of material fact.

MajorWager's motion falls woefully short of reaching the threshold for summary judgment.  Under Rule 56, summary judgment is only proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Shaw v. Lindheim*, 919 F.2d 1353, 1359 (9th Cir. 1990); *citing Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).  Furthermore, the test for summary judgment in a copyright case is the same as the standard applied to all civil actions. *Shaw*, 919 F.2d at 1358-59.  Here, as the moving party, MajorWager has the initial burden of "presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial." *Rowell v. Powerscreen Intern., Ltd.*, 808 F. Supp. 1459, 1462 (D. Nev. 1992).  By no means do MajorWager's bare, unsupported arguments even remotely approach this initial threshold. MajorWager has not presented any evidence, nor have they put forth any compelling argument to suggest that MajorWager is entitled to judgment as a matter of law.  Similarly, MajorWager has offered nothing to rebut the allegations and supporting evidence put forth by Righthaven, all of which implicates MajorWager's culpability.  Regardless, even assuming, *arguendo*, that MajorWager did meet its initial burden, MajorWager would nevertheless fail to achieve summary judgment.  Pursuant to Rule 56, once the movant has met the first burden, "the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue

for trial." *Rowell*, 808 F. Supp. at 1462.  Righthaven, by way of the Complaint and evidence attached in support thereof, has clearly presented such facts demonstrating a genuine issue for trial.  Righthaven has pled copyright ownership, pled the nature of the MajorWager Infringement, and has exhibited evidence to substantiate these allegations. Complaint ¶ 54, 60, Complaint Ex. 15, 16.  Furthermore, any uncertainty this Court might have about the intent of the Righthaven Assignment and transfer of rights occurring therein unquestionably gives rise to a genuine issue of material fact, thereby mandating a denial of summary judgment.

The purpose of the Righthaven Assignment, and the intent of the parties to the Righthaven Assignment, must be construed as questions of fact.  This basis, standing alone, is sufficient to defeat summary judgment. *Gifford v. Atchison, Topeka and Santa Fe Ry. Co.*, 685 F.2d 1149, 1156 (9th Cir. 1982) ("Summary judgment is generally not proper when the intent of a party is placed in issue.").  Though Righthaven maintains that the terms of the Righthaven Assignment are unambiguous, the Ninth Circuit has firmly established that "ambiguity in a contract raises a ***question of intent, which is a question of fact precluding summary judgment***." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983) (emphasis added).  In addition, the Ninth Circuit has extended this philosophy to the interpretation of assignments. *Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.*, 268 F.3d 1133, 1138 (9th Cir. 2001).  Adopting California law, the Ninth Circuit in *Orion Tire* held that "the interpretation of an assignment clause, like the interpretation of contract terms generally, is a ***question of the intent of the parties and is typically a question of fact for the jury***." *Id*. (emphasis added).  Though Righthaven adamantly maintains that the terms of the Righthaven Assignment unambiguously transfer the right to bring suit for any past, present, or future infringements, any uncertainty this Court may have as to the underlying intentions of the parties to the Righthaven Assignment must be construed as a question of fact.  Consequently, this matter cannot be dismissed as a matter of law.

### B.  *MajorWager has Subjected Itself to Forum Jurisdiction*

#### 1.  *A Willful, Knowing Copyright Infringer is Subject to Forum Jurisdiction*

The Ninth Circuit has made unequivocally clear that a willful, knowing copyright infringer is subject to forum jurisdiction.  The Ninth Circuit has held that the jurisdictional inquiry ends in a copyright infringement case when "Columbia alleged, and the district court found, that Feltner willfully infringed copyrights owned by Columbia, which, as Feltner knew had its principal place of business in the Central District." *Columbia,* 106 F.3d at 289 (emphasis added). Indeed, the Ninth Circuit went on to hold that "[t]his fact alone is sufficient to satisfy the 'purposeful availment' requirement." *Id.*  In other words, no further elemental or factored analysis is required.   As such, in this copyright infringement case, the jurisdictional analysis need go no further.  Amazingly, MajorWager never mentioned this holding to the Court.

#### 2.  *Uncontested Complaint Allegations Must be Taken as True*

This Court must take the uncontroverted allegations in the Righthaven's Complaint as true. In reviewing a motion to dismiss for lack of personal jurisdiction, the Ninth Circuit holds that "uncontroverted allegations in plaintiff's compliant must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004). There is an "assumption that all the allegations in the complaint are true" *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 n. 1 (2002). Therefore, the Complaint allegations that MajorWager does not directly address or controvert in the Motion to Dismiss must be taken as true by this Court. Additionally, in the presence of contested allegations the law is venerable "Courts frown on a litigant's use of the motion as a 'shotgun tactic' to substitute for discovery.... In the presence of proper, although general, allegations, the motion will usually be denied on the grounds that discovery is the more appropriate vehicle for obtaining the detailed information." *Crooker v. National Enterprise Systems*, No. 08-01322, 2008 WL 5243641 (C.D. Ca. Dec. 9, 2008). Here, MajorWager alleges, in the Motion to Dismiss, jurisdictional facts that controvert Complaint allegations. If this Court deems MajorWager's shotgun approach to personal jurisdiction as persuasive, then jurisdictional discovery is a more appropriate vehicle to resolve the contested allegations. Righthaven

maintains that personal jurisdiction over MajorWager in Nevada is absolutely appropriate because of uncontroverted Complaint allegations which this Court must take as true. *Schwarzenegger* 374 F.3d at 800. However, to the extent that this Court has any uncertainty on personal jurisdiction, arising from the controverted Complaint allegations, the jurisdictional questions should be resolved through discovery, not through a motion to dismiss.

### 3. *MajorWager was a Willful, Knowing Copyright Infringer Vis-à-vis Nevada*

MajorWager knew each and every copyright infringement came from a Nevada-based source. Complaint ¶ 7-9 (uncontroverted by MajorWager).  Despite MajorWager's attention to general jurisdictional elements, MajorWager almost entirely ignores the specific jurisdictional analysis for copyright infringement. MajorWager refers extensively to the "express aiming" test not being satisfied in this case. *See Calder v. Jones,* 465 U.S. 783 (1983). However, MajorWager is a copyright infringer of the Nevada-based Work. Complaint ¶ 60 (uncontroverted by MajorWager). MajorWager reproduced and displayed a complete, verbatim, unauthorized reproduction of the Work that gave the appearance that MajorWager was the original producer or author of the Work. Complaint ¶ 60 (uncontroverted by MajorWager).  The Work was originally published in a Nevada-based daily periodical and disseminated almost exclusively to Nevada-based readers. The Work and the Infringement both depict the Las Vegas *Review-Journal* as the original source publication. Complaint Ex. 14, 16 (uncontroverted by MajorWager). The subject matter, at least in part, of both the Work and the Infringement, is the rush in activity at Las Vegas, Nevada-based sports books for the 2010 NCAA Tournament. MajorWager cannot logically claim that MajorWager did not know the Work was targeted and intended for Nevada-based readers or that the Work did not emanate from a Nevada-based source. The Ninth Circuit holds that "individual targeting of a known forum resident, which allegedly created ***competition for the plaintiff and confusion as to authorship of the text***, amount[s] to express aiming." *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 987 (9th Cir. 2009) (emphasis added). Consequently, MajorWager's infringement created competition for potential viewers, confused authorship and amounted to express aiming at Nevada residents. MajorWager

reproduced an article emanating from Nevada that influenced Nevada residents; therefore MajorWager must have known the Infringement would target Nevada residents.

### 4.  *MajorWager's Employee Posted the Infringing Material*

Personal jurisdiction requirements for MajorWager in Nevada are further satisfied because the person who posted the infringing material is an employee or agent of MajorWager. The Supreme Court has held that a defendant's liability may be determined by the material participation of the defendant's employees in the infringement. *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 438 (1984). In *Sony*, the Supreme Court held that the defendant was not liable for the infringement solely because no employee of defendant had "direct involvement with the allegedly infringing activity." *Id* at 438.  The MajorWager facts provide the exact inverse to the *Sony* holding, where liability is derived when an employee or agent is directly involved in the infringing activity. Here, the available facts on CLEVFAN, the individual who apparently posted the infringing material, confirm that CLEVFAN is a MajorWager employee or at least an authorized agent. CLEVFAN posted at least fourteen (14) Righthaven-owned literary works on the MajorWager website. Complaint Ex. 1-13, 16. However, MajorWager claims, without substantiation, that CLEVFAN is not an employee of MajorWager. Declaration of Russ Hawkins ¶ 5-11. In contrast to MajorWager's assertions, there are three distinct elements indicating CLEVFAN as a MajorWager employee or agent: (1) CLEVFAN is listed on the "contact us" webpage of the MajorWager website, a section usually reserved for identifying website employees or employees of the company that owns the website (see Exhibit 3); (2) CLEVFAN's title is identified as "staff" according to his profile on the MajorWager website, indicating that CLEVFAN is indeed an employee of MajorWager (see Complaint Ex. Exhibit 16); and (3) as of June, 10, 2010, CLEVFAN has posted at least 31,592 times on the website, wherein the next closest user has posted only 504 times (see Exhibit 4). To reiterate, CLEVFAN is listed on the "contact us" webpage, has the title of "staff" and is by far the most active user of the website. These facts, when viewed collectively, give the indicia that CLEVFAN has a direct pecuniary interest in the MajorWager website, is compensated for his

efforts, and invests concerted time into advancing and growing the MajorWager endeavor. Additionally, to the extent that this Court is uncertain that CLEVFAN is an employee or agent of MajorWager, the proper vehicle to obtain the detailed information on CLEVFAN would be discovery rather than a motion to dismiss. Summarily, MajorWager is a willful, knowing copyright infringer of Righthaven-owned works, in part, because CLEVFAN, an employee or agent of MajorWager, posted at least fourteen (14) Righthaven-owned copyright works on the MajorWager website.

### 5.   *MajorWager is Subject to Personal Jurisdiction on a General Jurisdictional Basis*

It is abundantly clear that MajorWager's activities and contacts with Nevada give rise to not only specific jurisdiction, as discussed above, but also general jurisdiction. The Ninth Circuit has held that "the exercise of personal jurisdiction must comport with fair play and substantial justice." *Schwarzenegger,* 374 F.3d at 802. Here, MajorWager has extended itself through continuous and systematic contacts with Nevada by: (1) publishing content emanating from Nevada that is of specific interest to Nevada residents, (2) providing discussion forums with topics of specific interest to Nevada residents, and (3) providing online guides to educate gamblers on sports wagering and dealing with sports book establishments. These continuous and systematic contacts, established via the MajorWager website, provide ample means for this Court to exercise personal jurisdiction over MajorWager in Nevada.

### a.   *MajorWager Continuously Publishes Content Emanating from Nevada that is of Specific Interest to Nevada Residents*

MajorWager, via MajorWager's website, provides links to Nevada-based publications and, with specific respect to this lawsuit, has reproduced fourteen (14) literary works, in their entirety, in the "forum" section of the MajorWager website. Complaint Ex. 1-13, 16. The Ninth Circuit has held that willful copyright infringers who reproduce content from a source known to exist in the forum purposefully avail themselves of said forum. *Columbia,* 106 F.3d at 289. Here,

MajorWager demonstrates a continuous and systematic approach to copying content from Nevada-based publications, specifically the Las Vegas *Review-Journal*, and reproduces that content without authority or license to do so. In addition, MajorWager provides, on MajorWager's website, a "major news" section wherein the title and date of publication of relevant news publications are listed. Exhibit 2. Said listings are merely hyper-links to the original source material, but nevertheless demonstrate MajorWager's interjection into the Nevada jurisdiction by acting as an aggregator of sports wagering and gambling news. This aggregation of news is of specific interest to Nevada residents because Nevada is only one of four states in the United States where a sport wagering is legal.[3] MajorWager's deliberate act of providing links and reproducing content that is of specific interest to Nevada residents justifies the exercise of personal jurisdiction over MajorWager in Nevada.

### b.  *MajorWager Offers Discussion Forums with Topics of Specific Interest to Nevada Residents*

MajorWager is the self-proclaimed "Internet's #1 Sports Forum Talk Forums" and the vast majority of discussion forums provided by MajorWager are related to sports wagering. Exhibit 2.  The Ninth Circuit has held that Internet advertisements alone are not sufficient to exercise personal jurisdiction, but "something more" is required. *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 418 (9th Cir. 1997).  Here, MajorWager has sports wagering advertisements on the MajorWager website, but the "something more," as required by the Ninth Circuit, are the extensive discussion forums specifically related to sports wagering and gambling. In *Cybersell*, the Florida defendant did nothing to encourage Arizona residents to join the website and only provided a passive home page on the Internet displaying the name "Cybersell." *Id*. The Court held that because of the lack of commercial activity and the lack of "something more," the Florida defendant was not subject to personal jurisdiction in Arizona. *Id*.  The MajorWager facts

---

[3] States that allow sports wagering and betting:
    a.   Nevada:  Nev. Rev. Stat. §§ 463, 464 (2009).
    b.   Oregon:  Ore. Laws Ch. 462 (2009).
    c.   Montana:  Mon. Co. Ann. § 23-4-3-1 (2009).
    d.   Delaware:  Del. Co. Ch. 219 (2009).

differ significantly from *Cybersell*. As previously mentioned, Nevada is one of the only jurisdictions in the United States to offer legalized sports wagering and therefore, forums and discussion boards that deal with sports wagering are inevitably intertwined with Nevada-based sports books. MajorWager's website is not a static home page but rather a community-driven discussion forum website that thrives on the activity of the members. These discussions, as one would expect from a website entitled "MajorWager," emphasize sports wagering and gambling. As an example, on June 10, 2010, some of the discussion threads in the most popular forum of MajorWager's website involved wagering on: (1) the upcoming FIFA World Cup (Discussion Thread: "Soccer Experts I Need Help"), (2) the remaining games in the NBA Finals Series (Discussion Thread: "NBA FINALS One Prop Per Game"), (3) the docket of MLB games for June 10th (Discussion Thread: "Thursday Picks Thread"),  and (4) WNBA games for the upcoming weekend  (Discussion Thread: "WNBA Plays"). Exhibit 5. This one-day sampling of the MajorWager forums illustrates that MajorWager is fundamentally involved in sports wagering and targets an audience interested in sports wagering.  Nevada is one of the only jurisdictions in the United States where the type of wagering information and commentary provided in the discussion forums can take place legally. It is disingenuous for MajorWager to dispute the allegation that MajorWager has continuous contacts with Nevada when the focus and livelihood of MajorWager endeavor is so tightly associated with sports wagering, and therefore tightly associated with Nevada. MajorWager's claims that MajorWager does not have any commercial activity in Nevada clouds the fundamental issue: without the ability of Nevada-based sports books to accept sports wagers, MajorWager would not be as popular or even a viable media outlet or website. Additionally, the information and commentary MajorWager provides also gives rise to potential jurisdictional facts that may associate MajorWager with wagering referral services or direct association with sports wagering online and within Nevada. To the extent that there is any question that this Court can exercise personal jurisdiction over MajorWager in Nevada, Righthaven reserves the right to move for leave to conduct jurisdictional discovery, which would allow Righthaven to obtain the full extent of information as to MajorWager's association with Nevada-based sports books, Nevada residents who are members

of MajorWager's website, and MajorWager's sports wagering associations. These facts may illustrate even more contacts with Nevada and further distinguishing MajorWager's actions from the facts in *Cybersell*. Thus, when the Ninth Circuit requires "something more" from MajorWager to exercise personal jurisdiction, that requirement is undoubtedly satisfied by MajorWager's effort to propagate sports wagering information via forums, discussion threads, and contacts with Nevada residents and sports books.

### c.   *MajorWager Profits from  Sports Wagering and Gambling*

MajorWager's enterprise centers around sports wagering and the community culture of gambling on sports. As mentioned in the argument above, if this Court has any question as to personal jurisdiction over MajorWager in Nevada, the facts surrounding MajorWager's operations, revenue sources, and corporate associations are ripe for jurisdictional discovery. Additionally, MajorWager's contacts are yet increased by a substantial section of MajorWager's website devoted to a guide for sports wagering and gambling strategies. This jurisdictional element falls within the Ninth Circuit's holding for "something more" to justify personal jurisdiction. *Cybersell*, 130 F.3d at 418. Here, MajorWager provides, to MajorWager's members, an online guide entitled "Sportsbetting 101." Exhibit 6. The topics in this guide include, but are not limited to, "Sports Book Tips, Sports book Management, and Sports Book Hedging." This guide advances MajorWager's enterprise by educating users on sports wagering, which increase wagering activity and revenue sources for companies associated with sports wagering, including MajorWager. The information and commentary provided in this online guide is purposefully targeted at Nevada residents, where gambling and sports wagering are a prominent aspect of the community. In fact, Nevada is unquestionably the largest, best known and most accessible venue for sports wagering in the United States. As such, MajorWager's online guide is directly targeted at residents of Nevada or at people interested in traveling to Nevada. The information in MajorWager's online sports wagering guide aids Nevada residents and potential visitors to Nevada and contributes significantly to the Ninth Circuit's "something more" test, thereby justifying the exercise of personal jurisdiction over MajorWager in Nevada.

### 6.   *MajorWager's Canadian Base of Operations does not Negate MajorWager's Infringing Conduct*

Regardless of MajorWager's classification as a Canadian company, MajorWager's infringing conduct occurred in the United States. A defendant's infringement occurs in the United States when the defendant invites users to download content from a foreign location. *Playboy Enterprises, Inc. v. Chuckleberry Publications, Inc.*, 939 F. Supp 1032, 1044 (S.D.N.Y. 1996). In *Playboy*, the Court held the fact that a "local user 'pulls' these images from Tattilo's computer in Italy, as opposed to Tattilo 'sending' them to this country, is irrelevant. By inviting United States users to download these images, Tattilo is causing and contributing to their distribution within the United States." *Id.* at 1044. Here, MajorWager invited United States residents to view the Infringement when MajorWager posted the Infringement on the MajorWager website. The extraterritorial protection that MajorWager claims fails on the ability of a United States resident to view the Infringement or to have the Infringement distributed electronically within the United States. No further extraterritorial analysis is required by this Court.

MajorWager fails to substantiate its assertions that no infringing activity occurred in the United States and that Righthaven failed to meet plaintiff's burden to allege that the infringing activity occurred in the United States. MajorWager's unfounded allegations cloud the irrefutable fact that MajorWager: (1) copied the Work from a Nevada-based source, (2) imported the Infringement to the United States, and (3) utilized a United States domain name to display the Infringement. MajorWager cannot escape personal jurisdiction or liability with the hollow and disingenuous assertion that MajorWager's Canadian location allows MajorWager extraterritorial protection from the Copyright Act.

### a.   *MajorWager Copied the Work from a United States-Based Source*

MajorWager copied the Work from the Las Vegas *Review-Journal,* a Nevada-based publication that provides an additional online publication venue at <lvrj.com>. MajorWager electronically accessed the Las Vegas *Review-Journal's* webpage that contained the Work.

26

MajorWager copied the text of the Work and then reproduced the Work, on an unauthorized basis, on the MajorWager website. MajorWager's infringing conduct did not take place entirely outside the United States. The Ninth Circuit holds that "the Copyright Act does not reach acts of infringement that take place entirely abroad." *Subafilms Ltd. v. MGM-Pathe Communications Co.,* 24 F.3d 1088, 1098 (9th Cir.1994) (en banc) (internal quotation marks omitted). Here, a substantial and significant portion of MajorWager's infringing conduct took place within the United States because MajorWager accessed a Nevada-based source, copied the Work from that Nevada-based source and then reproduced the Work on a website accessible by a worldwide audience. Motion to Dismiss at 13, ln. 13. Thus, MajorWager availed itself of jurisdiction in Nevada when it accessed the Nevada-based source and infringed on the Righthaven copyright.

### b.   *MajorWager's Infringement was Imported to the United States*

MajorWager infringed on Righthaven's exclusive right, as the owner of the copyright in and to the Work, to authorize acts of reproduction and duplication in the United States. Where a person or company imports an infringing work into the United States, the federal courts have jurisdiction over the action for infringement because Section 106 of the Copyright Act grants the owner of a copyright the exclusive rights "to do and to authorize" certain acts, among which are the reproduction and distribution of the copyrighted work. This distribution right includes the right to import copies of the work. In *GB Marketing USA Inc. v. Gerolsteiner Brunnen GmbH & Co., 782 F. Supp. 763, 772-73 (W.D.N.Y.1991),* the Court found subject matter jurisdiction over a bottled water distributor's copyright infringement action against a foreign bottler: though the bottler applied the labels to bottles in Germany, the labels were specifically designed for marketing in the United States, the bottles were packaged for shipment to the United States, and the bottler sold them to a company which imported them to the United States. *Citing* Nimmer on Copyright § 8.11[B] (1990).  Thus, the importation of the infringing work is an infringing act occurring in the United States.  Here, MajorWager reproduced a Righthaven-owned literary work on the MajorWager website which, as MajorWager claims, has a worldwide audience. Motion to Dismiss at 13, ln. 13. MajorWager's actions mirror the defendant in *GB Marketing* because

MajorWager imported the Infringement that was intended specifically for Nevada-based residents into the United States and posted the Infringement on a website accessible to United States residents. Righthaven met its pleading requirement, in this respect, by alleging that MajorWager directed activities at Nevada-based residents. Complaint ¶ 7. There can be no doubt that MajorWager's actions caused the Infringement to occur in the United States.

### c.  *MajorWager Utilizes a United States Domain Name*

MajorWager is a Canadian company, but MajorWager's use of a United States top-level domain, ".com," rather than the use of the designated Canadian top-level domain, ".ca," demonstrates MajorWager's intent to interject itself into United States jurisdictions. The unique Internet country code top-level domain (ccTLD) for Canada is ".ca." Registrants of .ca domains must meet Canadian presence requirements as defined by the domain registry requirements which include a legally recognized Canadian organization.[4] Here, MajorWager is a Canadian organization but MajorWager chose to utilize a United States top-level domain name, rather than the .ca top-level domain. MajorWager's affirmative act and choice of domain names further demonstrates that MajorWager has sufficient ties to the United States. Any content or material that appears on the MajorWager website is imported and intended for the United States. In the specific case of the Infringement, MajorWager expressly targeted Nevada-based residents by posting the Infringement on MajorWager's website. Complaint ¶ 7. MajorWager's choice of domain names, as a singular point illustrates MajorWager's intention to associate and participate in United States jurisdictions and fails to support MajorWager's claim that no infringing activity occurred in the United States.

---

[4] As governed by the Canadian Internet Registration Authority. *See* http://www.cira.ca.

28

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, Righthaven respectfully requests that this Court deny MajorWager's Motion to Dismiss (Docket No. 8).

Dated this eighteenth day of June, 2010.

RIGHTHAVEN LLC

By: /s/ J. Charles Coons

STEVEN A. GIBSON, ESQ.
Nevada Bar No. 6656
J. CHARLES COONS, ESQ.
Nevada Bar No. 10553
JOSEPH C. CHU, ESQ.
Nevada Bar No. 11082
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am an employee of Righthaven LLC and that on this 18th day of June, 2010, I caused the **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** to be served by the Court's CM/ECF system.

By: /s/ J. Charles Coons

J. CHARLES COONS, ESQ.
Righthaven LLC
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701